You may begin whenever you're ready. Good morning. May it please the Court. Kara Hartzler on behalf of Mr. Ruvalcaba. This case involves two evidentiary errors at trial and a pretrial motion to dismiss. I'd like to begin with the evidentiary error involving the prosecutor's use of a Xerox machine to enhance the fingerprint in a photo. After the first trial ended in a hung jury, the prosecutor took the key piece of evidence, Exhibit 5, which is at ER 490, and he admitted that he basically used a Xerox machine to enhance a fingerprint that was barely visible by making it darker and lighten a photograph in which the person's face had previously been almost blacked out. And this was a problem. This violated the federal rules of evidence. And I want to go directly to why we think... Isn't this something, in a sense, that happens a lot? Let's say you have, you know, the fine print in a contract and it's, you know, fuzzy and gray and it's blown up on a giant whiteboard for the jury to read. I mean, this is kind of standard fare, is it not, to enlarge and clear up, you know, difficult-to-read or difficult-to-  We're not saying that someone can't enlarge an exhibit. And people do that all the time. That's not the problem. We're also not saying that someone other than the lawyer can't enhance a document. For instance, you know, they can make it clear. And experts do that all the time. If this was a case where a third party other than the prosecutor had enhanced this, this wouldn't be an issue. So what's the issue? Cross-examining to be sure that it's authentic? Were you really challenging the authenticity? I don't think this is an authenticity, Your Honor. I think there's two rules of evidence that are directly relevant here. The first one is the fact that, is this an accurate reproduction? And the question is, if it is actually being enhanced, is it in fact an accurate reproduction of the original? So that's the first one. The other one is, was this unfair to admit? And the problem that we have here is this was unfair to admit because we had no way of cross-examining the person who did this enhancement. And the reason that this is a bigger problem than just this case and the reason why it's not necessarily restricted to prosecutors or defense attorneys, or it could be civil attorneys as well, is as technology advances, it's going to become more and more tempting for lawyers to use technology to say, well, you know, that's a little bit fuzzy. Let me just Photoshop this. Let me just clean it up a little. Let me just use the technology that is getting better every day to essentially change the nature of an exhibit. Except, what I'm looking for was some notes about your comment that it was only the lawyer. Because at the second trial, I think there was the custodian of the file who was cross-examined or was examined about whether this remained an accurate depiction or whether this was an accurate rendition. So it wasn't just the lawyer. There was a foundation laid for it. Your Honor, and if I could, I would point to ER 67. And there, for instance, what I believe this is, I'm not sure if this is the expert or if it's the AFAL custodian, but basically the prosecutor asked the person, does this appear to have been the fact that it's blown up? And the person says no. Now the problem is that the person being cross-examined there didn't have personal knowledge of the enhancement. They hadn't done it themselves. Well, the person testified that the enlargement was a fair and accurate depiction of the photograph that had not been altered. That is correct. The problem is that we didn't have the ability to, let's say that it was an accurate reproduction. Let's assume that it was. The problem is that we still didn't have the ability to cross-examine the person who had enhanced the photo to say Did you object on that grounds? That we hadn't objected That you wanted the custodian of the person, you wanted to be able to cross-examine the person who made the enhancement? We didn't say that specifically. Okay. No, because I didn't see it either. I saw very clearly that you objected. There's no question about that. That's correct. To the enhancement. But I didn't see that you said We need to have somebody else here. So are you here on plain error as to that question? No, we're not, Your Honor. Why not? Because you had a chance to cross-examine the person who said it was fair and accurate and I've compared them. So you had that opportunity. And if you didn't ask to question someone else, why wouldn't that be plain error review? Well, frankly, there's no way that it could have been remedied. Because the person who did the enhancement was the prosecutor. And under the advocate witness rule, we could have objected all we wanted. But you didn't say that. But you surely could have pointed that out. And made clear to the district court that he had put you in a very awkward position or she had put you in a very awkward position by doing the copying themselves. We could have made, yes, exactly that. And that would have been better. I feel like you're sort of stuck with claiming that this isn't the best evidence without being able to say we didn't get to  the point where we made a sufficient objection. We said, look, this is not an accurate reproduction. We should be able to, you know, this shouldn't come in. I think that that was sufficient. The court may disagree. But we do think that that was sufficient. So, really, what this gets to is the question of should a person who is a lawyer be able to do the enhancement? And, frankly, they shouldn't. Because there should be an amendment. It seems like such a totally different argument than you made in the district court. I mean, it's just, it just seems like so different in kind that I have difficulty seeing without calling that to the district court's attention. It's an important point, surely. But it seems a little bit late now. It feels completely different from anything you've briefed or argued thus far. We did brief it in our reply, Your Honor. No, that's too late. I'm happy to move on to another issue. You have a finding here from the district court that there was nothing remarkable about that. That's what the district court said. I think I've had faint documents before and sometimes scanners or printers have a lever on them that allows you to darken the thing and the image is better. I think one of the other problems here, Your Honor, is that basically then the prosecutor, in his questioning, never was able to, or never drew out that this was ever enhanced. And we didn't have the ability to do that. I understand that... It was very clear that the district court knew that it was enhanced and the prosecutor knew that it was enhanced. But the jury didn't. Well, but the district court did say, Mr. Israelite said, it looks like a misrepresentation. It looks like a completely different fingerprint. And the court said, sounds like wonderful fodder for cross-examination. And we couldn't cross-examine the person who had done the enhancement. Well, but you could cross-examine the fingerprint expert. Or the custodian of the A-file. Is this the same thing as you've got on the A-file? And you had those as exhibits. There's no question that this fingerprint was enhanced. I understand. I'll move on, Your Honor. So I would like to go to our second trial error. And that's the question of whether the district court abdicated its dauber gatekeeping role. This case is on all fours with the en banc decision in the state of Barabin. And in that case, what the court held... So we can decide, assuming that the district court abdicated its responsibility there, we can look at it and determine whether it was admissible. Why isn't it? No. And that's exactly what Barabin said. No, it doesn't. Barabin says we don't have to. It doesn't say we can't. So I'd like you to address my question, knowing that you disagree with my interpretation of the case. Knowing what the record is now, why wasn't this admissible? Why wasn't Mr. Beers' testimony admissible? Right. I'm actually not going to argue that, Your Honor. I fundamentally disagree with Your Honor over the interpretation of Barabin because what the government... You're entitled to do that, but if we were to disagree with you, and right now I don't know what my colleagues think because we don't pre-confer, but just are you going to argue at all? Are you going to respond to the question of what we should decide if we are the ones to decide it? Your Honor, what I would say is that the idea that we look at whether the expert testimony was admissible is precisely what the majority rejected in Barabin, that the dissent said. Okay. You don't have to answer the question. It's less helpful to me, but that's your choice. And, Your Honor, I... Well, you will contend, if we were to send it back for a new trial, and if Mr. Beers were called again, you would challenge his credentials once again and ask the district court to exclude him under Daubert as not an expert. Absolutely. The error is made in the second trial when the district court says that's a jury question. I would disagree that a finding was made in the first trial, even if it was made and even if it could carry over, the district court said three times in the second trial that this was an issue for the jury. I completely agree with that, but we're just trying to figure out whether under Barabin, and I understand that you disagree with Judge Graber's reading of Barabin, whether we can decide it. And it looks to me as though the district court has already said, I've seen Mr. Beers before, counsel, you've seen Mr. Beers before, and he has testified so many times in court, there's no question of his expertise. In the second trial, the district court inexplicably takes a very different approach. So I think it does come down to, we certainly wouldn't object if the court is going to remand. We think that the remand should be for a new trial. I understand that the court may believe that it is a remand for the district court to make a finding of whether that expert is No, there's a third option here, which is what Judge Graber is telling you. And you don't want to talk about that. We can say the record is clear. And since the district court admitted him previously, and he has this extensive record of testifying as an expert in other cases, that there's nothing for the district court to decide. Indeed, it would nearly be a reversible error for the district court to decide otherwise. That's right. I wouldn't contest that. So, in the little bit of time that I have left, I'm going to go directly to the pretrial motion to dismiss. There were three errors here. Basically, first of all, the agent, Kelly, essentially didn't, he admitted eight times that he only summarized the information that by regulation he was supposed to read in its entirety to the person who was being expeditedly removal. There was also this whole issue of at this point, in terms of withdrawal relief, we have absolutely no idea what standard is being used when you have a person who is being considered for withdrawal. They used to use the six factors in the inspector's field manual. Then, numerous sources said that's no longer used. The prosecutor couldn't find any evidence about what actual standard is used. The person who did Mr. Rubalcava's thing, his expedited removal, said that he doesn't remember what he used. So, basically, without a standard, this court isn't able to decide prejudice. Then, the final thing, I'll just say, Your Honor, is the right to counsel issue and expedited removal. This has been argued before. I would just say in terms of setting aside the statutory arguments for a moment, setting aside the APA arguments, if we look at this under a Matthews v. Eldridge analysis. I have a question about your claim. I thought his claim was that he was not advised that he could have counsel. That would come from page 43 of the opening brief, which is different than whether he could have counsel. In other words, he wasn't denied counsel. He's asking for advice. Am I right about that? You are right about that, Your Honor. I just want to be clear. What they said is that we didn't advise him of this right because he doesn't have the right. That's where it came from. So, Your Honor, I'm happy to go through the Matthews factors, but I would like to save a little bit of time for rebuttal. You may certainly do that. That's all right. Thank you. May it please the Court, Zach Howe on behalf of the United States. I will start where my friend started with the best evidence rule. The Court properly admitted this evidence or did not abuse its discretion in admitting this evidence. The relevant places where the AFILE custodian and expert beers testify that these were accurate reproductions appear at ER 32 and 33, 67 through 69, and 78 through 79. So, there was a prima facie case made as to the authenticity of these exhibits and then they were properly admitted. A number of cases that we cite in our briefs have admitted exhibits similar to these. One case from the District of Minnesota said that changes to brightness are so unremarkable that they couldn't possibly affect the accuracy of the exhibits. But counsel raises a really good question about advancing technology with things like Photoshop. You can now start changing coloration and then put it into black and white and end up with really different shading. And it seems to me that there is a danger there. So, to the extent that danger exists, Your Honor, I don't think it exists in this case. And the reason I say that is because nothing was added to or taken away. Do we know that whoever copied these, was that you or was that somebody else? No, Your Honor, that was trial counsel. Okay. Do we know that trial counsel did this and didn't do anything other than make adjustments  11 through 14 of the excerpts of record where the prosecutor essentially says that all he did was change the brightness setting when he hit the button on the copier. So we do know that in this case, Your Honor. I'm just trying to think. The issue of this being done by the lawyer was not raised below. But had it been, how do you think that would have been handled? How could that be handled? Right. So I do agree it's way. But if this issue had been preserved, then I think in a situation like the one we have here where there's nothing added to or removed from the image and the court has properly found that in a preliminary determination under 104, then I think it's perfectly appropriate for a witness to testify that it's an accurate reproduction. In a number of the cases. Well, if the specific argument had been made, presumably your office would have had the opportunity to have someone else try the case so that the copying individual could have been questioned. I mean, that would be a possibility, I suppose. But I don't know that it's necessary in this circumstance. So to give some examples, the Gordon case that we cite from the Eighth Circuit, the Fournier case we cite from the Southern District of New York, the Cobb case we cite from the Southern District of Ohio, all involved exhibits that were created by someone other than the individual who testified. And the court nevertheless found that those exhibits were accurate reproductions because there were experts who could testify to that effect. Now, certainly you can imagine extreme examples where the changes are so extreme that Well, let me take you there. Because you said just a minute ago that we had only changed the brightness setting. That might work on the photograph. How does that work on the fingerprint? I haven't got anything at all in the copy that's been provided to me on the ER. There isn't anything I could do with that that would get us anything. Yes, Your Honor. So there's actually a problem with the scan of the PDF. So you could see the photograph or the fingerprint on the original. So it was both enlarged and then darkened or either lightened. That's correct. But I guess the point I'm making is on Exhibit 5 itself. Our copy is not as good as the one that was in court. Right. And I do have that copy if the court would like to take a look at it. But it is a fainter fingerprint. But you can see the fingerprint on Exhibit 5 which is the certified AFILE document. So again, it's not a matter of a blank box turning into a fingerprint. It's a matter of a light fingerprint turning into a somewhat darker one. Isn't enlargement and darkening of a fingerprint something that ought to be handled by an expert in fingerprinting as opposed to a U.S. attorney? I don't think so, Your Honor. Again, this is a process that a number of courts we've cited as called unremarkable. So unremarkable that it does not affect the accuracy of the image at all. If something was... An expert might be able to say that, but I wouldn't say I know enough about fingerprinting to know whether making it darker or making it bigger makes it harder to read or easier to read or easier to compare. Isn't that something an expert ought to do? Well, and again, I might agree if this were something other than just hitting the copy button. If something has been added to or taken away from the image... I thought you darkened it or something. That's correct. The brightness... So you didn't just hit the copy button. You adjusted the copy to make it look a certain way. Yes, Your Honor. If there are no other questions on that, I'll move on to the gatekeeping issue. There was no plain error in admitting the... or in exercising the gatekeeping function here. I do agree under that underbear in the court has the option to consider whether the testimony was admissible, but certainly... But is the government ready to concede that the district court didn't exercise its proper function? No, Your Honor. You think that turning that over to the jury was proper? No, I simply don't think that that's what happened here. Certainly, that's not what happened on plain error review. And the reason I say that is because... Okay, well, you better point me to pages because I reread this this morning and it looks pretty clear to me that the district court said, I'm going to just turn this over to the jury. Because nobody did in the first trial. That's what he did in the second trial. Right. And so the relevant page would be 62 of the excerpts of record. That's where the comments that came after. So the reason I say that that's not plainly erroneous is because of what came after and what came before those comments. And I agree, they're poorly worded and taken in a vacuum. They may be problematic. But directly after those comments, the court says that it is for the jury to decide how much weight to give those comments based on the reasons for them. And what the court appears to be doing is simply... And where does he say that? That's in the same sentence as... Starting at line 20, give his testimony whatever weight you think he deserves. In light of that testimony, the reasons given for the opinion are the other evidence in the case. That's pretty close to what you would say with any witness, right? But I think the reason the court is saying that is because it wants to avoid the impression that expert testimony... But it's up to you to decide whether the witness, by virtue of his experience and training, is qualified. And I agree. In a vacuum, that's a problematic comment. But because of what came after... And again, I also think you have to look at what came before. We have two trials, two extensive voir dires, two times where the court explicitly overrules objections to admitting the expert testimony, and at least one finding of reliability on page 220 of the excerpts of record, where the court says, I find that there's a basis for Mr. Beers to offer an opinion on the basis of his fingerprint comparison in this case. I'm sorry, which page was that? That was 220 of the excerpts of record. But that's the previous one. That's the first trial. Right, that's the first trial. But Your Honor, what Ruvalcaba is asking you to do is essentially ignore everything that came before the first trial. But there's no reason to do that, and certainly not on plain error review. This court has time and again emphasized that courts have extensive discretion when fashioning Daubert proceedings. Why is this plain error review on this one? Because there was no objection to the gatekeeping function. And the court has made clear that issues of admissibility and gatekeeping are not the same. So because there was no objection to the gatekeeping function, plain error review is appropriate. And then, as I alluded to earlier, at steps three and four of plain error review, it is certainly appropriate to consider whether the testimony was admissible. That's exactly what this court did in its Young decision. It's an unpublished decision, but it's persuasive here. It considered whether the evidence was admissible. And I won't belabor that point because it doesn't... Well, Barabin just says we cannot speak to the admissibility of the expert testimony because the record is too sparse to determine whether it's relevant or reliable. But that suggests that we could if we knew enough. I agree with that. So I agree that even if we were in a different procedural posture, Barabin may not foreclose that inquiry. But certainly on plain error review, where you have steps three and four to look at, it did not undermine Ruvalcaba's substantial rights or the fairness and integrity of the judicial proceedings to admit obviously admissible testimony. So with the remaining time, if there are no other questions, I'll turn to the due process issues. And I'd like to start with the prejudice issue solely because it sweeps across all of the due process issues. And then I'll circle back to the others if I have time. This court held in Barajas-Alvarado that if there was any question as to what standards were applied, and it was disputed in that case, the question was, was the field manual applied or was a BIA standard for withdrawal relief applied? The court would simply hold that relief was not plausible if under the field manual, the claim would still fail. So even if there was a question here as to what was applied under this court's finding precedent, the appropriate response is to apply the field manual. Again, we don't think that's the case. We think the record shows that the field manual was applied. Pages 38, 338 and 339 of the record demonstrate that. But regardless, the appropriate approach is to apply the field manual. And here, all six of the factors weigh against a finding that it was plausible that Ruvalcaba would have been granted withdrawal relief. This was a serious offense. We know that because it came on the heels of an aggravated felony conviction and three other deportations. There are prior findings of inadmissibility because Ruvalcaba has been removed three prior times. He intentionally violated the laws. We know that because he didn't come through a port of entry. He came through the mountains and was found 12 miles inland. He couldn't easily overcome those grounds of inadmissibility because he had that aggravated felony. He's relatively young. He's 38 years old. And he's healthy again. He was healthy enough to come through the mountains. And no humanitarian factors favor him. And that's because his entire family, with the exception of a brother and an uncle, are in Mexico. His wife and three other siblings are there. And in addition, he has that aggravated felony for alien smuggling and has admitted that he smuggled aliens successfully six times before that for a total of 30 to 36 aliens. So there are no factors suggesting that it would be plausible that he would be granted withdrawal over his application for admission here. So there was no prejudice. Now, if I can hit on the actual due process issues, beginning with the notice and opportunity to respond, Agent Kelly testified and the district court found, and these findings are undisputed, at footnote 8, page 37 of the opening brief, Ruvalcaba concedes these findings, that Agent Kelly covered all of the material in the form I-867, and he left, quote, no doubt as to the understanding that Ruvalcaba had of that material. So for purposes of notice and an opportunity to respond, Ruvalcaba got all of the notice that he was entitled to for due process purposes. With regard to the right to an attorney, there certainly is no statutory right. 1225 doesn't provide that right. 8 CFR 235.3 doesn't provide that right. And this court in Barajas, Alvarado held that there is no right to an attorney in expedited removal proceedings under 1225. As to a due process right, under the Matthews v. Eldredge factors, we don't think that that right exists for the reasons that this court outlined in its original Peralta Sanchez opinion. Which has now been vacated. That is correct, Your Honor. For the reasons the court discusses, however, we do find that the court has persuasively explained why that right doesn't exist. In fact, our only quibble with the opinion is that in that case the proper standard for analyzing the due process right was not waived. So the court may have been too deferential in applying that standard at all. We've suggested that the Weiss test is the proper test to apply because we are dealing with plenary powers of Congress. In fact, the Supreme Court has said that there is no possible area over which Congress exercises more power than in immigration. And if that Weiss test applies, I think it's dispositive here. In fact, Ruvalcaba has not argued in either his opening or his reply brief that he satisfies the Weiss test. He doesn't mention the Weiss test. But again, even if the court applies Matthews v. Eldredge I think all of the factors weigh against recognizing the right to counsel here. The private interest is weak when we're dealing with individuals who have only been here for less than 14 days. The risk of erroneous deprivation is low because the only inquiry is whether the alien has valid documents allowing them to remain within the country. And if they indicate that they've ever had any sort of status, that they're an asylee, that they're an LPR, that they're a refugee, then they get extra process. That's outlined at 8 CFR 235.3 AB 4 through 7. They get extra process. So the risk of erroneous deprivation is low here. And then finally, the government interest is strong because they would have to detain aliens for weeks or at least days longer to afford the right to counsel. I see my time has expired. Thank you. Just to respond directly to the Matthews v. Eldredge if this court decides that it would like to weigh it into the Matthews v. Eldredge I think that this is actually a really good time to ask for more briefing and I'll tell you why. Since briefing concluded in this case, there's been an explosion of new entries on our southern border. We're dealing with this every day. It's mostly asylum seekers and there's a huge interest on their behalf that really changes the nature of the first inquiry under the Matthews v. Eldredge. So I would just ask that if the court... Is it your view that it's the same analysis for expedited removal as it is for other proceedings? The right to counsel? Yes. Yes it is. Why? Because, Your Honor, there's numerous statutory bases, APA bases that we've laid out in our briefing. The other thing I would say, Your Honor, is I think it's a little bit incorrect what opposing counsel said. When you have an asylum seeker who crosses the border, they are actually put into expedited removal and they're given an expedited removal order and they are questioned and answers that come out during that questioning then can be used against them in their asylum case. This is a huge, very important interest. So I would just say if the court wants to weigh it into this, I think we're in a different posture now and it would behoove the court to ask for updated briefing on this. But I'll move on very briefly to another point. In terms of the Barabin issue, I just wanted to read one quote from Barabin and it's this. What the court said is, in both cases, we engage in harmless error review, as we always do, by asking if erroneously admitting or excluding the evidence affected the outcome of the trial. And I saw the quote that Your Honor was referring to, but when I read Barabin, Barabin to me is absolutely clear that the answer is if there is an abdication of this job or duty that basically you have to look at whether the jury would have reached the same verdict even if the evidence had not been admitted. Thank you, counsel. The case just argued is submitted and we appreciate both of your comments. They were very helpful. Well, we are adjourned.
judges: Graber, Bybee, Harpool